UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

TRINA BIANCO,                          )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )        CIVIL NO.  3:14cv98
                                       )
CAROLYN W. COLVIN, Acting              )
Commissioner of Social Security,       )
                                       )
        Defendant.                     )

OPINION AND ORDER

        This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits, Widow's Benefits, and Supplemental Security Income  as provided for in the

Social Security Act.  42 U.S.C. § 401 *et seq*.  Section 205(g) of the Act provides, inter alia, "[a]s

part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record

including the evidence upon which the findings and decision complained of are based.  The court

shall have the power to enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the [Commissioner], with or without

remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as

to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C.

§405(g).The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less

than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security

Act through June 30, 2014.

2.  The claimant has not engaged in substantial gainful activity since July 28, 2008, the application date (20 CFR 404.1571 *et seq*., and 416.971 et seq.).

3.  The claimant has the following severe impairments: multilevel degenerative disc disease, degenerative joint disease with tendonitis/bursitis, a dysthymic disorder, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) , 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant requires the option to alternate between sitting and standing for at least 5 minutes every 60 minutes (i.e. the claimant retains the ability to sit, stand, and or walk for 60 minutes at a time but no more, then she must assume another position for at least 5 minutes before resuming the prior position), however, she would not need to abandon her work station or lose concentration. The claimant can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, and or/crawl. The claimant cannot perform work requiring overhead reaching with the right upper extremity, but she can occasionally reach overhead with the left upper extremity. The claimant must avoid concentrated exposure to extreme cold, humidity, or significant changes in the barometric pressure. Visually, the claimant cannot perform work that requires good nighttime vision, and if the work requires the claimant to read fine print, she must be allowed to use a magnifying glass. The claimant is able to read large print books (i.e. 16 point font or larger) for up to 15 minutes, and she is able to see well enough to discriminate between small objects for handling or inspection, but she cannot perform work that requires protracted and very fine visual acuity for identification of very small marks or blemishes; however, she does retain the ability to visually detect gross abnormalities. Mentally, the claimant is limited to simple, routine, repetitive tasks that require only simple decision making. The claimant can chose [sic] among a limited number of anticipated options but she is not able to come up with creative solutions to novel situations. The claimant cannot retain large amounts of information in her working memory (i.e. the work must involve tasks that the claimant can address and move on, rather than keeping mental track of past work performance). The claimant can tolerate only

occasional and minor changes in the work setting that do not require more than simple judgment. Lastly, the claimant requires work that can be accomplished by a person who is better dealing with the concrete, rather than the abstract.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 9, 1959 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 25-40)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on June 30, 2013. On October 6, 2013, the defendant filed a memorandum in support of the Commissioner's decision, and on November 21, 2013,

Plaintiff filed her reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed applications for SSI, DIB, and DWB on January 29, 2009, alleging a disability onset date of July 28, 2008. (Dkt. 13 at 434-35) The Disability Determination Bureau (DDB) denied the Plaintiff's claims on August 20, 2009, finding that her overall medical condition did not limit her ability to work. (Dkt. 13 at 170-80) She requested reconsideration (Dkt. 13 at 181-84), but her claims were denied again on December 9, 2009. (Dkt. 13 at 185-93)

Plaintiff filed a request for an administrative hearing on January 28, 2010. (Dkt. 13 at

195-96) On December 3, 2010, Plaintiff appeared for a hearing in Valparaiso, Indiana before Administrative Law Judge Edward P. Studzinksi of the Valparaiso, Indiana Office of Disability Adjudication and Review (ODAR). At this hearing, she was represented by an attorney. (Dkt. 13 at 145)  On December 23, 2010, Judge Studzinski issued an unfavorable decision, concluding the claimant's impairments permitted the performance of work. (Dkt. 13 at 155-56) Plaintiff filed a request for review by the Appeals Council of the Office of Disability Adjudication and Review, and the Appeals Council remanded the case for another hearing on December 19, 2011. The Appeals Council found that the prior decision did not contain an adequate evaluation of the medical source opinion of Dr. Richard A. Lochner, M.D., and did not state the claimant's Residual Functional Capacity (RFC) in specific vocationally relevant terms. (Dkt. 13 at 162-66)

At her remanded hearing on June 12, 2012, Plaintiff again appeared before ALJ Studzinski; this time without an attorney. (Dkt. 13 at 23) ALJ Studzinski issued a second unfavorable decision on August 16, 2012, again finding Plaintiff could perform other work in the national economy. (Dkt. 13 at 39)   Plaintiff again appealed to the Appeals Council, but the Appeals Council denied her request for review on November 15, 2013. (Dkt. 13 at 1)

Plaintiff was born on April 9, 1959.  At the time of her second hearing, she was 53. (Dkt. 15-2 at 36) Plaintiff went as far as the eleventh grade at John Glenn High School in Walkerton, Indiana. (Dkt. 13 at 702) She earned a GED in 1987. (Dkt. 13 at 444, 702) Her work history includes working in a fiberglass factory, residential painting, and caring for the elderly. (Dkt. 13 at 440)

Plaintiff's  first documented visit with Dr. Lochner was in July, 2007. At that time,

Plaintiff complained of "nerves." Upon exam, Dr. Lochner noted no physical abnormality and he diagnosed anxiety syndrome, depression, and pain in back and neck. He suggested a course of counseling and wrote prescriptions for Valium and Vicodin. (Dkt. 13 at 559) Plaintiff saw Dr. Lochner several times in 2008 for medication refills. On November 10, 2008, however, Plaintiff complained of worsening neck pain, reporting "Painful when turning her head. Pain wakes her up at night. Some numbness in legs and hands. Neck cramps." Dr. Lochner noted stiffness and tenderness and assessed her with pain in her neck and back, plus anxiety and depression. (Dkt. 13 at 551)

On August 8, 2009, Plaintiff attended an internal medicine consultative examination requested by the Disability Determination Bureau ("DDB") performed by Mahmoud Yassin Kassab, M.D. At that time, she complained of chronic lower back pain made worse with any kind of activity. Her visual acuity, with correction, was listed at 20/50 in her right eye and 20/70 in her left eye. In his report Dr. Kassab found Plaintiff to have clinical signs of illness, but reported she was not tender to palpation. He diagnosed low back pain and tobacco addiction and said Plaintiff would have no limits on her ability sit, stand, or walk. (Dkt. 13 at 592)

At a March 19, 2010 appointment with Dr. Lochner, Plaintiff complained the pain in her back and neck were getting worse. Upon examining her, Dr. Lochner noted her thoracic and lumbar/lumbosacral spine exhibited abnormalities. (Dkt. 13 at 615-16) He diagnosed low back pain and cervicalgia.

On July 9, 2010 Dr. Anthony E. Francis, M.D., at the request of the ALJ, completed interrogatories regarding Plaintiff. Dr. Francis wrote: "she may very well meet or equal a listing,

however, there is not enough information to make a determination" and it was "difficult to assign and RFC based on the paucity of medical records." (Dkt. 13 at 609)

On October 8, 2010, Plaintiff returned to Dr. Lochner for medication refills. At that time, she complained of being depressed and needing to re-start taking her medication for depression.

She also discussed her disability application with Dr. Lochner. (Dkt. 13 at 626) His examination revealed a decrease in suppleness and loss of range of motion. He also found her performance of lumbar range of motion actions caused pain. Dr. Lochner wrote that she had not had any recent studies of her back and neck for as long as he had known her due to finances. (Dkt. 13 at 627- 28)

On November 18, 2010, Dr. Lochner completed a medical source statement regarding Plaintiff. Dr. Lochner found she could only sit for 3 hours out of an 8 hour day. He limited her to 0-2 hours of standing/walking in an eight hour day. (Dkt. 13 at 631) He limited her to lifting less than 10 lbs. occasionally, rarely lifting 10 lbs., and never lifting 20 lbs. He said she should do no stooping, no pushing, no pulling, no kneeling and no bending. (Dkt. 13 at 632) Dr. Lochner indicated that the symptoms and limitations identified on his source statement applied from November 2008 forward. (Dkt. 13 at 633)

In the interim, Plaintiff had been doing charity work for the local hospital in order to pay for a much needed MRI (Dkt. 13 at 759) and developed right arm pain. At her May 13, 2011 visit with Dr. Lochner, Plaintiff complained of right arm pain radiating her neck and shoulder. Dr. Lochner's physical exam revealed a loss of suppleness in the neck, continued abnormalities of the lumbar spine, carpal tunnel syndrome, and a bone deformity of the right humerus bone. Dr.

Lochner diagnosed a closed fracture of the shaft of her right humerus, compression arthralgia, low back pain, derangement of the shoulder joint, cervicalgia, and myalgia and myositis. He recommended an MRI of the right shoulder, cervical spine, and lumbar spine. (Dkt. 13 at 759-761)

Plaintiff was finally able to have MRI's on June 29, 2011. The lumbar spine MRI demonstrated "degenerative disease, most pronounced at L4-L5 and L5-S1...[with]"[d]iffuse broad based bulging disc in conjunction with facet arthropathy and ligamentous thickening results in moderate to severe central canal stenosis at L4-L5." (Dkt. 13 at 660-61)

The cervical spine MRI revealed diffuse broad based bulging disc and spur contacting the thecal sac and narrowing the central canal at C5-C6. The bulging disc extended into and mildly narrowed the neural foramina. At C6-C7, it showed a broad based bulging disk which contacted the thecal sac and hypertrophic spurring at the uncinate processes. The bulging disc narrowed the neural foramina bilaterally. (Dkt. 13 at 659)    On July 6, 2011, Dr. Lochner saw Plaintiff and reviewed her MRIs. Again, cervical and lumbosacral spine pain were elicited by motion. (Dkt. At 664)

On August 12, 2011, state agency medical consultant B. Whitley, M.D. completed a Physical Residual Functional Capacity Assessment. (Dkt. 13 at 692-99) He found Plaintiff could work at a light level (lifting 20 pounds occasionally, 10 pounds frequently, and sitting or standing / walking for about 6 hours in an 8-hour workday).

Plaintiff  underwent a psychological evaluation with Alan Wax, Ph.D. on August 23, 2011. Dr. Wax noted that she was wearing a blouse with many stains, ambulated slowly, and

seemed to have a difficult time getting out of the chair when the examination was over. Her

mood and affect were somewhat flat. (Dkt. 13 at 702) Dr. Wax wrote that Plaintiff's cognitive

functioning appeared to be in the borderline range at best, with corresponding memory, attention,

communication, and focusing. His diagnosis included dysthmic disorder and borderline

intellectual functioning. (Dkt. 13 at 704)

Imaging of Plaintiff's right shoulder from September 11, 2011 showed degenerative

disease in the shoulder with an old right humeral fracture. (Dkt. 13 at 727)

On April 10, 2012, Plaintiff saw Laurie Jones, FNP, with multiple complaints which

included pain in her right shoulder pain, cervical spine, and both hips. Additionally, she

complained of pain and numbness in her hands. Ms. Jones's physical examination revealed

reduced range of motion in her right shoulder, which Ms. Jones attributed to old fractures of the

bone. Ms. Jones also found crepitus, a positive impingement test, and a positive reinforcement

test in Plaintiff's right shoulder. She further noted Plaintiff had diminished reduced strength in

both upper and both lower extremities and a positive, bilateral Finkelstein's test. (Dkt. 13 at 835-

836)

Ms Jones also noted "X-rays, previously taken, reveal an old crushed injury to the upper

humerus as well as a midhumerus fracture that has healed." She was able to elicit right hip pain

with flexion/extension and she noted Plaintiff had "tingling" feelings on both shins in the anterior

aspect to her ankles and numbness of the left foot. She found no sensation radiating from

Plaintiff's lumbar spine through the thigh area. She diagnosed cervical spine degeneration,

lumbar spine degeneration, right shoulder pain, bilateral carpal and cubital tunnel symptoms,

right hip groin pain with range of motion, and left greater trochanteric bursitis and ordered an X-ray of the right hip. (*Id.*) The April 19, 2012, X-ray showed mild degenerative arthritic changes to the right hip. After reviewing Plaintiff's X-rays, Ms. Jones recommended a series of steroid injections into Plaintiff's hip and referred her to Dr. Roman Filipowicz (Dkt. 13 at 807)

Ms. Jones expressed disappointment at the time of Plaintiff's next visit with the fact that Plaintiff's insurance refused most of the treatment options she advised. Nonetheless, Plaintiff underwent a repeat pain relief injection. (Tr. 833)

On July 11, 2012, Dr. Roman Filipowicz, M.D., a neurosurgeon wrote to Dr. Lochner regarding his consultation with Plaintiff. He noted he found she was only able to move her neck "marginally" in either direction. In addition, due to old injuries, he reported that Plaintiff has a lot of difficulty moving and also has some loss of strength in biceps and triceps. His exam of her lower extremities revealed pain with range of motion. He performed an injection into her right hip to treat the pain. He diagnosed "multiple trauma with pain" and commented that the x-rays of the pelvis and hips showed "the right hip is degenerating." He concluded: "She may need to apply for disability. She is unable to work at this time." (Dkt. 13 at 859-60)

A July 31, 2012 cervical spine MRI again showed spinal stenosis and disc bulging. (Dkt. 13 at 853) A lumbar spine MRI on this date showed degenerative disc disease at every lumbar level from L3 to S1 with "associated facet degenerative changes." (Dkt. 13 at 854)

On September 27, 2012, Dr. Martin J. Murphy wrote a letter regarding Plaintiff, who had seen him with complaints of pain, weakness, and numbness in her hands. On examination, she had bilateral positive Tinel signs, an indicator of carpal tunnel syndrome. Electrodiagnostic

studies documented entrapment of the left median nerve at the wrist and mild entrapment of the right median nerve. "The findings support the diagnosis of carpal tunnel syndrome." (Dkt. 13 at 865-66)

As noted, at the first hearing in this case, Plaintiff went before ALJ Studzinki and was represented by an attorney. After the hearing, the Appeals Council vacated the first hearing decision and ordered the ALJ to conduct a second hearing. At the subsequent hearing, Plaintiff was not represented by counsel. At this hearing, the ALJ further explained his first decision, stating that: "I think that one of the main reasons that I did not issue a favorable decision the last time this was before me was because of a lack of underlying clinical findings as to what exactly was responsible for your – for your various complaints." (Dkt. 13 at 63-64)

At the second hearing, Plaintiff noted she felt worse since the first hearing (Dkt. 13 at 58) and, when the ALJ asked her why she was unable to work, she answered, "I can't stay focused." She said she could only lift about ten pounds due to back pain and weakness and pain in her right arm and shoulder. (Dkt. 13 at 61-62) Plaintiff reported to the ALJ she had recently seen an orthopedic doctor who diagnosed carpal tunnel syndrome. (Dkt. 13 at 63) After discussing with Plaintiff her inability to stand and walk for very long and other physical limits on her activities, the ALJ consulted with the VE and presented a range of hypothetical limitations. The ALJ asked Plaintiff several questions in order to refine the hypothetical questions. The vocational expert said that jobs were available based on these hypotheticals. (Dkt. 13 at 81)

Th ALJ's Decision sets forth a summary of the Appeals Council's remand order, indicating that it required the ALJ to provide further analysis regarding the weight afforded to Dr.

Lochner's opinion and address the RFC in specific vocationally relevant terms regarding the need

for a sit/stand option. (Dkt. 13 at 23)

In this opinion, as set forth above, the ALJ assigned Plaintiff a detailed RFC:

> [T]he claimant requires the option to alternate between sitting and standing for at least 5 minutes every 60 minutes (i.e. the claimant retains the ability to sit, stand, and or walk for 60 minutes at a time but no more, then she must assume another position for at least 5 minutes before resuming the prior position), however, she would not need to abandon her work station or lose concentration. The claimant can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, and/or crawl. The claimant cannot perform work requiring overhead reaching with the right upper extremity, but she can occasionally reach overhead with the left upper extremity. The claimant must avoid concentrated exposure to extreme cold, humidity, or significant changes in barometric pressure. Visually, the claimant cannot perform work that requires good nighttime vision, and if the work requires the claimant to read fine print, she must be allowed to use a magnifying glass. The claimant is able to read large print books (i.e. 16 point font or larger) for up to 15 minutes, and she is able to see well enough to discriminate between small objects for handling or inspection, but she cannot perform work that requires protracted and very fine visual acuity for identification of very small marks or blemishes; however she does retain the ability to visual detect gross abnormalities. Mentally, the claimant is limited to simple, routine, repetitive tasks that require only simple decision making. The claimant can chose [sic] among a limited number of anticipated options but she is not able to come up with creative solutions to novel situations. The claimant cannot retain large amounts of information in her working memory (i.e. the work must involve tasks that the claimant can address and move on, rather than keeping mental track of past work performance). The claimant can tolerate only occasional and minor changes in the work setting that do not require more than simple judgment. Lastly, the claimant requires work that can be accomplished by a person who is better dealing with the concrete, rather than the abstract.

(Dkt. 13 at 30)

The ALJ found Plaintiff not credible, noting Dr. Lochner had indicated no gait or station abnormalities, and that "prior to the alleged onset date, Dr. Lochner's treatment notes make little reference to musculoskeletal abnormalities aside from the claimant's subjective allegations." (Dkt. 13 at 31)  Additionally, the ALJ claimed the record showed an inconsistency in why Plaintiff stopped working –"there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments, but because the person she was caring for entered a structured care facility" but "at a consultative examination the claimant reported that her physical limits caused her work cessation."  (Dkt. 13 at 32)  Finally, the ALJ concluded the record demonstrated "general inconsistencies between the use of braces and ambulatory aids that I could not reconcile with the objective evidence, saying the claimant endorsed the use of a cane and a back brace, but the medical records made no mention of a back brace, she didn't present for physical examinations with a cane, and her primary care physician never noted any gait abnormalities."  (Dkt. 13 at 36)

The ALJ rejected Dr. Lochner's opinion noting "Dr. Lochner's treatment notes do not support such restrictions. . . . Moreover, at the time of the opinion, the claimant admittedly had not undergone any diagnostic imaging for over 10 years. . . when the opinion was submitted, Dr. Lochner lacked the requisite medical evidence to make an accurate determination of the claimant [sic] functional ability.  For the foregoing reasons, I afforded the 2010 opinion of Dr. Lochner little weight when assessing the claimant's residual functional capacity."  (Dkt. 13 at 37-38)

The ALJ also addressed the opinion of Dr. Filipowicz, ("[she] cannot work")  "First,

14

while Dr. Filipowicz does have a treating relationship with the claimant, that treatment history is quite brief.  In fact, the opinion appears to have been drafted after his initial assessment of the claimant; at that point no clinical diagnostic testing had been done, making it clear he relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, which he seemed to uncritically accept as true. . . . . Furthermore, the opinion expressed was quite conclusory, providing little explanation of the evidence relied on in forming that opinion. . . . As such, the little weight afforded to this opinion was appropriate for the instant matter."  (Dkt. 13 at 38)

The ALJ relied on the state agency medical consultant's physical assessment, which was afforded "partial weight."  He concluded he "found more recent diagnostic imaging supportive of greater postural and manipulative restrictions.  For this reason, I accordingly limited the claimant to occasional climbing of ramps or stairs, but never ladders, ropes, or scaffolds, and only occasionally balancing stooping kneeling, crouching, and crawling.  I also included the foregoing environmental restrictions to accommodate the claimant's testimony of symptom exacerbation with changes in temperature."  (Dkt. 13 at 37)   The ALJ denied Plaintiff's claim at Step Five, finding she could perform light work.  (Dkt. 13 at 39-40)

In support of remand or reversal, Plaintiff first argues that the ALJ erred by failing to develop a full and fair record.  Plaintiff claims that the ALJ failed to obtain evidence about carpal tunnel syndrome, while "playing doctor" regarding her physician's finding.

Plaintiff also claims that, despite the ALJ's constant references to "clinical diagnostic testing," he failed to  elicit information about the Plaintiff's treatment for carpal tunnel and, thus,

15

failed to complete the record with a copy of the EMG report, choosing instead to dismiss her allegations due to a lack of evidence.

While there is no constitutional right to counsel at a Social Security disability hearing, there is a statutory right to have counsel present at the hearing under Section 206 of the Social Security Act (42 U.S.C.A. § 406). *See also Goldberg v. Kelly*, 397 U.S. 254 (1970); *Thompson v. Sullivan*, 933 F.2d 581 (7th Cir.1991).

Regardless of whether a waiver of counsel is valid, an ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is satisfied when the ALJ "scrupulously and conscientiously" probes the claimant for possible disabilities and uncovers all of the relevant evidence. *Binion v Shalala*, 13 F.3d 243 at 245 (quoting *Smith v. Sec'y of Health, Education, & Welfare*, 587 F.2d 857, 860 (7th Cir.1978)); *see also Thompson*, 933 F.2d at 585-86. Even if the Commissioner establishes that the record was developed fully and fairly, the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap. *Binion*, 13 F.3d at 245. Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant. *Id*. at 245-246 (citing *Smith*, 587 F.2d at 860; *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir.1991) (ineffective notice of right to counsel insufficient to warrant remand; to determine whether case should be remanded, the court must look at whether the "record reveals evidentiary gaps which result in unfairness or 'clear prejudice' ") (citations omitted).

In the present case, the ALJ obtained a valid waiver of counsel (Dkt. 13 at 51-54), thus satisfying the first prong of the test, while acknowledging his duty to complete the record (Dkt.

13 at 53, 54).  To satisfy the second prong, the ALJ has a duty to "scrupulously and conscientiously [to] probe into, inquire of and explore for all of the relevant facts." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).  At the remand hearing, Plaintiff told the ALJ a medical professional diagnosed her with carpal tunnel syndrome.  Further, the ALJ offered to obtain outstanding evidence (Dkt. 13 at 56-58) and kept the record open for a month. However, at the second hearing, the ALJ did not ask Plaintiff about any carpal tunnel symptoms or how her carpal tunnel symptoms limited the use of her hands.

Clearly, though, the record and Plaintiff's testimony contain multiple references to carpal tunnel syndrome. As far back as March of 2011, she was diagnosed by Dr. Lochner with right carpal tunnel (Dkt. 13 at 760) and in her extensive physical examination on April 10, 2012, Laurie Jones, N.P. noted Plaintiff complained of hand tingling and numbness in conjunction with a positive Finkelstein test bilaterally with numbness "in both hands with the compression of the radial nerve." (Dkt. 13 at 835).  During her testimony, Plaintiff noted she had nerve problems in her hands (Dkt. 13 at 62) and indicated she was diagnosed with "carpal tunnel." (Dkt. 13 at 63) Yet the ALJ never asked Plaintiff how carpal tunnel affected her daily living.

Plaintiff argues that the ALJ also failed to understand SSA Regulations.  In his decision, when discussing Step 2, the ALJ says "20 CFR 404.1 508 and 416.908 dictate a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms." (Dkt. 13at 26) Plaintiff argues that her "signs and symptoms," included  "positive Finkelstein's sign in both hands" (Dkt. 13 at 835-836) and "compression of the radial nerve causes numbness and tingling." (*Id*.)

17

Plaintiff contends the ALJ ignored the clinical signs of carpal tunnel in the record.

"When an ALJ interprets records without the assistance or opinion of a medical expert, he must justify such an action and sufficiently articulate his assessment of the evidence to assure a reviewing court that the ALJ considered the important evidence and enable the Court to trace the path of the ALJ's reasoning." *Rohan v. Chater*, 98 F. 3d 966, 970-971 (7th Cir. 1996)("ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings"); See also, *Williams v. Massanari*, 171 F Supp. 2d 829, 833 (N.D. Ill. 2001).

Plaintiff argues that in the present case, the ALJ determined his judgment and education could substitute and over-rule the judgment of trained professionals, that he ignored signs and symptoms of Plaintiff's carpal tunnel syndrome, and he failed to elicit the assistance of Dr. Martin's consultation, despite promising to develop a full and fair record.

Plaintiff claims that this alleged error on the ALJ's part resulted in further errors. Plaintiff claims that the ALJ assigned a sedentary RFC with numerous other restrictions without including any manipulative restrictions for carpal tunnel syndrome or inquiring what limits Plaintiff might have due to this condition. Plaintiff points out that SSR 96-9p notes "Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." Plaintiff argues that her limitations in this area were never presented to the Vocational Expert.

Although the record is a bit confusing about what the ALJ knew and didn't know about Plaintiff's carpal tunnel syndrome, and as to whether he should have asked the Plaintiff about any tests she was about to undergo now that she had insurance, it is nevertheless clear that all of the

medical evidence regarding Plaintiff's carpal tunnel syndrome was not considered by the ALJ.

As Plaintiff was proceeding *pro se* at her last hearing, the court finds that the ALJ had a duty to

probe a bit deeper to uncover all relevant evidence. Thus the court will remand for yet further

review, so that all the evidence may be thoroughly considered.

Next, Plaintiff argues that the ALJ erred at Step Three by failing to properly weigh

treating physicians' opinions. Plaintiff claims that the ALJ did not afford appropriate weight to

Dr. Lochner's opinion about her functional limitations. A treating doctor's opinion must receive

controlling weight if it is "well-supported" and "not inconsistent with the other substantial

evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue,* 647 F.3d 734, 739 (7th

Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir.2011); *Campbell v. Astrue*, 627 F.3d

299, 306 (7th Cir.2010). An ALJ must offer "good reasons" for discounting the opinion of a

treating physician. *Scott*, 647 F.3d at 739; *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011);

*Campbell*, 627 F.3d at 306. An ALJ may reject the opinion of a treating physician if it is based

on a claimant's exaggerated subjective allegations, is internally inconsistent, or is inconsistent

with other medical evidence in the record, *Dixon v. Massanari*, 270 F.3d 1171, 1177–78 (7th Cir.

2001), so long as he "minimally articulates his reasons for crediting or rejecting evidence of

disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (quoting *Clifford*, 227 F.3d at

871).

If an ALJ does not give a treating physician's opinion controlling weight, the regulations

still require him to consider the length, nature, and extent of the treatment relationship, frequency

of examination, the physician's specialty, the types of tests performed, and the consistency and

supportability of the physician's opinion. 20 C.F.R. § 404.1527(d); *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006); *Scott*, 647 F.3d at 740; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

The Appeals Council ordered the ALJ to re-examine his original findings regarding Dr. Lochner's 2010 opinion. Plaintiff claims that the ALJ's second decision attempts to repeat the same conclusion with just a little more verbiage. Dr. Lochner opined that the claimant was only capable of sitting for three hours, that she could stand and walk for up to two hours, and that she is limited to occasional lifting of less than 10 pounds, rarely lifting between 10 and 20 pounds, and never more than 20 pounds. (Dkt. At 631-633)

The ALJ ruled that this opinion from her treating physician was "unsubstantiated," because "his treatment notes do not support such restrictions…[s]pecifically,…at no point in any of Dr. Lochner's records…was the claimant's gait, station, or balance noted to be abnormal." (Dkt. at 37). Plaintiff argues that the ALJ does not indicate why limits on sitting and stooping would necessitate findings of abnormal gait and station.

The ALJ continues "[i]n fact, the only noted abnormalities were intermittent findings of general tenderness in the shoulder, *[sic]* and cervical/lumbar regions." (*Id*.) Plaintiff claims that this is a complete misstatement of Dr. Lochner's findings. On March 19, 2010. Dr. Lochner recorded his findings as "exhibiting abnormalities" (Dkt. 13 at 615-16); at the next visit, he noted a decrease in range of motion of the neck and that the performance of the range of motion examination resulted in pain. (Dkt. 13 at 627-28) At this visit, he also noted Plaintiff was unable to obtain laboratory studies due to financial hardship. At a later visit, he commented she

exhibited a loss of suppleness in the neck, continued abnormalities of the lumbar spine, etc. (Dkt. 13 at 759-761) Plaintiff argues that the ALJ has failed to build the required "logical bridge" from fact to conclusion. (*Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013))

The ALJ offers a second reason for rejecting Dr. Lochner's opinion, i.e., his treatment of Plaintiff has been "conservative" and was "never altered." (Dkt. 13 at 37) Plaintiff contends that this reasoning contains no basis in reality. SSR 96-7p indicates "…the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment… [because] [t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." Plaintiff argues that Dr. Lochner treated Plaintiff conservatively because she could afford nothing more. And, when she did receive insurance, he immediately referred her to Dr. Filipowicz and, later, Dr. Martin.

The ALJ also claimed that Dr. Lochner's opinion has no basis without laboratory findings. Plaintiff argues that the ALJ ignored the clinical findings from Dr. Lochner's exams and concluded that Dr. Lochner lacked the requisite medical evidence to render an accurate diagnosis. Plaintiff points out that later MRIs showed that Plaintiff had stenosis of the central canal in both the cervical and lumbar regions of her spine and concludes that Dr. Lochner's medical judgment was correct.

The Commissioner downplays Plaintiff's inability to afford more aggressive medical care

and advanced imaging, noting that the records fail to reflect that any additional medical care was necessary but not pursued due to limited resources. The Commissioner also claims that Plaintiff has not indicated what "significant clinical findings" are found in Dr. Lochner's examination notes. Rather, the Commissioner insists that Dr. Lochner's treatment notes demonstrate few abnormal findings and thus, the ALJ's opinion is accurate and well-supported. In an abundance of caution, the court will remand this case for further review of Dr. Lochner's opinion. While the evidence may not totally support the Plaintiff's position, it does not totally support the Commissioner's position, either. As it is apparently undisputed that Plaintiff went a significant amount of time without adequate medical insurance, this situation should be fully considered when reviewing the medical record during that time period.

Plaintiff also claims that Dr. Filipowicz's opinion should have been afforded greater weight. Dr. Filipowicz opined that Plaintiff was unable to work, and the ALJ discounted this opinion as being one "reserved for the Commissioner". However, as the Seventh Circuit has recently stated:

> …The judge's ground was that determining disability is reserved to the Commissioner of Social Security (by which the administrative law judge meant reserved to him). That isn't true. What is true is that whether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician. But the answer to the question depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored *(string cite omitted)*. *Garcia v. Colvin*, 741 F.3d 758 (7th Cir. 2013) at 760.

Plaintiff points out that Dr. Filipowicz's letter (Dkt. at 859-860) to Dr. Lochner did not

contain a decision regarding her eligibility for benefits. He merely commented on her ability to work full-time.

The ALJ's second complaint about Dr. Filipowicz's opinion was that the doctor's brief treating relationship with Plaintiff meant he "seemed to uncritically accept as true" Plaintiff's subjective complaints. Plaintiff argues that there is no basis for the ALJ's position with respect to Dr. Filipowicz"s opinion. In his letter, Dr. Filipowicz noted his examination of her found a loss of strength in her biceps and triceps, pain with range of motion in her lower extremities, and that she was "unable to move her neck" due to "pain and cracking noises." Additionally, Dr. Filipowicz noted he reviewed her recent X-rays and, on that basis, injected her hip with pain killer.

Lastly, the ALJ expressed his medical judgment that the MRI's and X-rays did not support Dr. Filipowicz's findings. Plaintiff claims that the ALJ "cherry-picked" the laboratory findings to support his medical judgment and rejected every physician opinion.

In this instance, the court finds that the ALJ properly considered Dr. Filipowicz's opinion. While he was not permitted to ignore the opinion that Plaintiff was unable to work, the ALJ did not have to give this opinion great weight. Likewise, the record shows that Dr. FIlipowicz's opinion was supported by only conclusory support. Moreover, the record shows that the ALJ fairly represented the X-ray and MRI results, and does not, as Plaintiff suggests, improperly summarize or cherry-pick this evidence.

Next, the Plaintiff argues that The ALJ further erred by failing to build a logical bridge between the evidence and his conclusion that the claimant's allegations are "partially credible."

In assigning a Residual Functional Capacity, the ALJ must consider the claimant's testimony, the objective medical evidence, and opinions from medical sources. 20 C.F.R. § 404.1545(3). Social Security policy requires the adjudicator to articulate "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7p. A court will not disturb the weighing of credibility so long as the determinations are not "patently wrong." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.2006) (citing *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir.2004)). However, when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford*, 227 F.3d at 872. A court should reverse a credibility determination if it finds that the rationale provided is "unreasonable or unsupported." *Prochaska*, 454 F.3d at 738 (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir.2006)). The Seventh Circuit also holds that an ALJ cannot simply select evidence favoring his conclusion, but must "confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002). An ALJ must consider all relevant medical evidence and cannot cherry-pick facts that support a finding of non-disability while ignoring evidence supporting disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citations omitted).

The ALJ found Plaintiff not credible, in part, because she indicated on her Function Report that she needed a back brace daily and a cane occasionally. The ALJ stated that Plaintiff's medical records did not mention the use of a back brace, she did not arrive at her medical appointments with a cane, and Dr. Lochner did not note any gait abnormalities.

Plaintiff argues that although the records may not reflect that she uses a back brace, there is nothing in the record stating that she didn't use (or need) one. Plaintiff notes that a MRI of her lumbar spine showed broad based disc bulging and moderate to severe central canal stenosis, indicating degenerative disc disease. Plaintiff argues that these conditions may lead one to utilize a back brace. Plaintiff further notes that a review of the transcripts from both the December 2010 and July 2012 hearings shows that the ALJ never asked her about using a back brace. The Plaintiff contends that if the ALJ saw her statement regarding a back brace as an issue which would cause him to think she was less than honest, he should have asked her about it at the hearing and given her an opportunity to address his concerns. Plaintiff notes that she completed the Function Report between the first and second hearings, and was not represented by an attorney at the second hearing and, thus, the ALJ should have inquired about the back brace if it was of particular concern.

With respect to the cane, Plaintiff did offer testimony about her use of the cane at the December 2010 hearing. She said she would use it about once a week when she was going to be walking, as it helped with her pain. Plaintiff argues that this statement is consistent with her Function Report where she indicated she used a cane occasionally, and also consistent with the fact that she did not use a cane at her doctor appointments as she did not expect to do a lot of walking. Plaintiff further contends that her testimony is also consistent with use of the cane despite any noted gait abnormalities, as she said it would help with her pain, not necessarily because she couldn't walk without a cane.

The Commissioner notes in response that the ALJ found more than a few reasons to find

Plaintiff not credible including: her ability to perform a variety of activities; conservative care; the effectiveness of medications; proven non-compliance; gaps in treatment; the fact that she only started seeking psychotropic medication refills after considerable time of non-compliance because she needed disability paperwork completed; the effectiveness of her injection regimen; her admission that her doctors did not specifically restrict her level of activity; evidence that Plaintiff stopped working for reasons unrelated to her impairments despite claims to the contrary; and evidence of symptom exaggeration as evidenced by claims of needing a "rod in her back" and other neurological issues that were not medically determinable. (Tr. 26-36).

In light of the ALJ's extensive discussion of the factors he considered in judging Plaintiff's credibility, this court will not disturb the ALJ's credibility determination as there is not sufficient evidence that his determination was "patently wrong."

Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REMANDED for proceedings consistent with this opinion.


Entered: December 26, 2014.


s/ William C.  Lee
William C. Lee, Judge
United States District Court